423 So.2d 949 (1982)
Acceus ST. PIERRE, Appellant,
v.
PUBLIC GAS COMPANY, a Domestic Corporation, Appellee.
No. 81-2025.
District Court of Appeal of Florida, Third District.
November 30, 1982.
Rehearing Denied January 12, 1983.
Keyfetz, Poses & Halpern and L. Barry Keyfetz, Miami, for appellant.
Conroy & Simberg, Hollywood; Daniels and Hicks and Sam Daniels, Miami, for appellee.
Before SCHWARTZ, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
We are called upon to decide whether a trial court is authorized to order a new trial on liability conditioned on the plaintiff remitting fifty per cent of the amount of damages awarded by the jury based on the trial court's conclusion that the plaintiff's negligence was fifty per cent of the cause of plaintiff's damages, not, as the jury had found, twenty per cent.
Jacqueline St. Pierre, married and the mother of five children, was killed when she lit a match causing the stove in her home to explode. Her husband, Acceus, and her son Karl were injured by the explosion. The stove had been serviced and repaired by the appellee, Public Gas Company, which also supplied gas to the St. Pierre home. Acceus St. Pierre, as next friend of Karl; as personal representative of the estate of his wife; and on his own behalf and on behalf of the children, Madeline, Laveline, Youseline, Nancy and Karl, brought a negligence action against Public Gas Company.
After a five-day trial, the jury found Public Gas negligent, awarded the plaintiffs damages of $308,806.16, and found Jacqueline "and/or" Acceus twenty per cent negligent. The trial court entered judgment for *950 the plaintiffs for $247,046.52 (the total damages awarded reduced by twenty per cent). Thereafter, on Public Gas's motion for new trial, the questioned remittitur was entered.
It is clear from the record before us that the total damages awarded by the jury were not excessive, a fact which, at least implicitly, was recognized by the trial court.[1] Despite this, the trial court conditioned the denial of a new trial on the plaintiffs' acceptance of a remittitur of damages based on an increase of the comparative negligence factor from twenty per cent to fifty per cent. In our view, the trial court's action was unauthorized.
In the strikingly similar case of Akermanis v. Sea-Land Service, Inc., 688 F.2d 898 (2d Cir.1982), the court addressed the question "whether a trial judge may use the device of a new trial order conditioned on a remittitur to increase a jury's determination of the percent of responsibility for an injury that is attributable to a plaintiff's contributory negligence."[2] At trial, the jury had found that Sea-Land, the operator of a vessel on which Akermanis was employed as an engineer, was negligent when, despite rolling seas and a deck slippery from the ocean's spray, its agents instructed Akermanis to work on deck. The jury further found the negligence of Akermanis, a man of thirty years maritime experience, was a four per cent cause of Akermanis' fall, which resulted in a disabling spinal injury. The trial court concluded that the jury's selection of this percentage was against the weight of the evidence and ordered a new trial on liability, but with the condition that a new trial would be denied if Akermanis would accept a "remittitur" of damages based on an increase of the contributory negligence factor from four to twenty-five per cent.
The Second Circuit Court of Appeals, analyzing the theory upon which a court's authority to order a remittitur is founded, held that remittitur could not be used to adjust the jury's finding in respect to the extent to which a plaintiff's own negligence contributed to his injury. The court stated:
"Remittitur is a limited exception to the sanctity of jury fact-finding. It allows trial judges to reduce damages, but only when an award is grossly excessive. As the Supreme Court has stated, this exception is justified because, `[w]here the verdict is excessive, the practice of substituting a remission of the excess for a new trial is not without plausible support in the view that what remains is included in the verdict along with the unlawful excess  in that sense that it has been found by the jury  and the remittitur has the effect of merely lopping off an excrescence.' Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935). But in Dimick, the Supreme Court made clear that remittitur was not an expansive doctrine: `Maintenance of the jury as a factfinding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.' Id.

"In giving that scrutiny to the use of remittitur in this case, this court notes a fundamental difference between the use of remittitur to decrease a determination of damages and its use here to increase a contributory negligence percentage. Though both have the same ultimate consequence of reducing the amount of the judgment that the plaintiff is invited to accept as the price of avoiding a new trial, the means by which the reduction is accomplished differ in a way that is critical, to determining the lawfulness of the technique. A conditional reduction of a *951 damage calculation leaves in the judgment a portion of what the jury awarded, a circumstance that the Supreme Court considered crucial to its willingness to permit remittitur while rejecting additur in Dimick. In this case, however, the conditional adjustment of the contributory negligence percentage inserts into the judgment something beyond what the jury found: a conclusion that the plaintiff's negligence was responsible for a greater share of the accident than the jury had thought." Id. at 902.
In a long and unbroken line of cases, Florida courts have employed the same Dimick rationale in rejecting a trial court's authority to impose an additur.[3]See Bennett v. Jacksonville Expressway Authority, 131 So.2d 740 (Fla. 1961); Healy v. Atwater, 269 So.2d 753 (Fla. 3d DCA 1972); City of Fort Walton Beach v. Southern State Steel Corp., 249 So.2d 62 (Fla. 1st DCA 1971); Wohlfiel v. Morris, 122 So.2d 235 (Fla. 2d DCA 1960); State Road Department of Florida v. Cox, 118 So.2d 668 (Fla. 3d DCA 1960); Sarvis v. Folsom, 114 So.2d 490 (Fla. 1st DCA 1959). We share the Second Circuit's view that the same rationale which prevents additur precludes any adjustment that extends a jury's finding, even if that extension results, as it does here, in a reduced monetary judgment. The question of apportioning the negligence between the plaintiff and the defendant is one that is peculiarly within the province of the jury and is not subject to adjustment by remittitur.[4] Accordingly, the order granting a new trial is
Reversed.
NOTES
[1] Had the damage award been so excessive as to shock the judicial conscience or to indicate some improper motive on the part of the jury, the remedy would be remittitur or new trial on the issue of damages only. See Gould v. National Bank of Florida, 421 So.2d 798 (Fla. 3d DCA 1982) and cases cited therein.
[2] The case was brought pursuant to the Jones Act, 46 U.S.C. § 688, under which the plaintiff's contributory negligence is not a bar to recovery, but rather is the functional equivalent of Florida's comparative negligence rule.
[3] The Legislature has since authorized additur in actions arising out of the operation of motor vehicles. See § 768.043, Fla. Stat. (1977). The statute has been held constitutional in the face of an attack that it intruded into the rule-making province of the judiciary. Adams v. Wright, 403 So.2d 391 (Fla. 1981).
[4] Public Gas Company concedes that there was ample evidence to support the jury's finding that it was negligent to some degree. Even were remittitur a proper device for adjusting the percentages of negligence, we think the evidence clearly supported the jury's finding and would reverse the order below on the separate ground that the trial court abused its discretion in granting a new trial. See Gould v. National Bank of Florida, supra.