DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BRIAN FERNALLD,**
Appellant,

v.

**ABB, INC.,** a Florida corporation,
**LEWIS NODDIN,** and **LAURA NODDIN,**
Appellees.

No. 4D19-3511

[March 10, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. CACE-16-016854 (08).

Chris Kleppin of The Kleppin Firm, P.A., Plantation, for appellant.

Anisley Tarragona of BT Law Group, PLLC, Miami, and Pedro J. Torres-Diaz of Jackson Lewis P.C., Miami, for appellee Laura Noddin.

KUNTZ, J.

Brian Fernalld appeals the circuit court's order granting in part Laura Noddin's motion for remittitur or new trial on Fernalld's $550,000 defamation award against Ms. Noddin. While we understand the judge had questions about the jurors' verdict, those questions did not allow the judge to serve as the seventh and ultimate juror. Fernalld asked the jury to award him hundreds of thousands of dollars on his defamation claim, and the jury did so. The court erred when it remitted the verdict to $100,000. We reverse the court's order and remand with instructions to reinstate the jury's verdict.

### *Background*

Fernalld filed a four-count complaint for: (I) age discrimination against his former employer, ABB, Inc., about his termination; (II) age discrimination against ABB for Fernalld's terms and conditions of employment; (III) retaliation against ABB; and (IV) defamation per se or

defamation per quod against ABB, Ms. Noddin, and her husband Lewis Noddin.

ABB, Ms. Noddin, and Mr. Noddin, collectively filed an answer and affirmative defenses, asserting, among other defenses, that Fernalld was terminated for a legitimate reason. Ms. Noddin also counterclaimed against Fernalld for civil battery.

At trial, Fernalld sought damages of $2,151,755.49 in back pay for his unemployment from 2014 to 2018, and $1,200,000 in future pecuniary loss. He explained that he did not have enough money to pay the bills, lived off his retirement money, borrowed money from his children, was forced to sell his house, and accrued credit card debt. Fernalld also claimed he owed his daughter $40,000, his son $10,000, and the bank "a hundred and some thousand dollars." Fernalld testified that he suffered emotionally too. At the lowest point, he thought that "maybe it was time to have a car accident or something" so his wife could receive his life insurance money. In response to a question from the jury, he testified that he contemplated suicide because he "didn't know what to do" about his finances.

After the trial, the jury returned its verdict. The jury found that Fernalld failed to prove that his employer, ABB, terminated him because of his age. But the jury also found Fernalld proved Ms. Noddin made defamatory statements about him that damaged his business and reputation. The damages Fernalld sustained, the jury concluded, totaled $550,000. Finally, the jury found that Ms. Noddin did not prove Fernalld committed a battery on her.

Ms. Noddin moved for remittitur, arguing the $550,000 award was "clearly indicative of prejudice, passion, or corruption on the part of the trier of fact." She argued the amount shocked the court's conscience as evidenced by the court's post-verdict comment that the award was "[c]ertainly not any kind of verdict [the court] would have ever guessed."

The court held a hearing on the motion. After the hearing, the court expressed that it did not know where the jurors got their number from and did not know what went into their thought process—looking at the facts, the court was "not sure how you get to 550,000." The court found that "[t]here seem[ed] to be a lot of inconsistencies" in the testimony, and stated that the inconsistencies are "probably why [the jury] found in favor of [Fernalld] on the defamation [claim] and against Ms. Noddin on the battery [claim]."

The court found that Fernalld's testimony about his depression and contemplating suicide "all pertain[ed] to him losing his job," and noted he never saw any health professionals for mental or physical health problems from the defamation. Ultimately, the court "didn't see" that Fernalld's emotional distress was attributable to Ms. Noddin's allegations. The court found:

> I think it's grossly excessive. I think it's – it's not reasonably related to the damages proved and the injuries suffered. And so I just don't see how it's logical. And you look at the different factors. And so I think it's indicative of passion by the jury, even based on a lot of the questions that they had asked during the trial.

Consistent with the oral ruling at the hearing, the court entered a written order reducing the verdict to $100,000.

## *Analysis*

"The circuit court's determination on an issue of remittitur is reviewed using an abuse of discretion standard." *Sch. Bd. of Broward Cty. v. Pierce Goodwin Alexander & Linville*, 137 So. 3d 1059, 1072 (Fla. 4th DCA 2014) (citing *Rowlands v. Signal Constr. Co.*, 549 So. 2d 1380, 1382 (Fla. 1989)).

When considering a motion for remittitur, the court must determine whether the amount of a damages award "is excessive . . . in light of the facts and circumstances which were presented to the trier of fact." § 768.74(1), Fla. Stat. (2019). In determining whether an award "exceeds a reasonable range of damages," the circuit court must consider five factors:

> (a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;

> (b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;

> (c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;

> (d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and

3

(e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.

§ 768.74(5)(a)–(e), Fla. Stat. (2019).

Here, the court concluded that it "[didn't] know what went into [the jury's] thought process" when it awarded $550,000 to Fernalld. The court's first thought when the $550,000 verdict came out was that it was "excessive" and "somewhat punitive" because the jurors seemed to be trying to "send a message that they didn't like it" and that they did not believe Ms. Noddin. The court also believed the jury's verdict against Fernalld on his discrimination claim was inconsistent with its verdict against Ms. Noddin on her battery counterclaim. Finally, the court did not believe that the evidence supported damages for the defamation claim and, instead, determined that the evidence related to the discrimination claims.

Although the circuit court had misgivings about the evidence and the jury's verdict, the jury's verdict was supported by competent substantial evidence, and the circuit court lacked competent substantial evidence to support its finding that the jury's verdict violated any of the section 768.74(1) factors.

Fernalld asked for hundreds of thousands of dollars from the jury for his defamation claim. He argued that he sustained significantly more damages too. He presented evidence that he was depressed, suicidal, in financial distress, and unemployed. He also presented evidence suggesting the defamatory statement was transmitted to each of ABB's fifty employees and people outside the company. Consistent with the requested amount and the jury's interpretation of the evidence, the jury awarded Fernalld $550,000 on his defamation claim. The court erred when it substituted its interpretation for the plausible interpretation accepted by the jury.

### *Conclusion*

We reverse the court's order granting Ms. Noddin's motion for remittitur and remand with directions to reinstate the jury's verdict.

*Reversed and remanded.*

GERBER and FORST, JJ., concur.

\*　　\*　　\*

4

*Not final until disposition of timely filed motion for rehearing.*